IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RONDA L. MARSH,<br><br>    Plaintiff,<br><br>vs.<br><br>LOUIS P. CAMPANA, Jr.,<br>Individually,<br><br>    Defendant. | 4:17-CV-3001<br><br>MEMORANDUM AND ORDER |

## INTRODUCTION

This matter came before the Court on September 25, 2018, for a hearing on plaintiff Ronda L. Marsh's motion for default judgment (filing 22) and corresponding claim for damages. The Court took judicial notice of the Magistrate Judge's Order of September 14, 2018, setting this matter for hearing beginning at 1:00 p.m. The Court also took judicial notice that on September 14, 2018, defendant Louis P. Campana, Jr. had been served with a copy of the Order setting this matter for hearing by regular United States mail at both his last known address and at the current address that the defendant is required to maintain as a registered sex offender.

The hearing commenced at 1:05 p.m. Appearing for plaintiff was her attorney Joy Schiffermiller. Due to transportation and financial difficulties, the Court allowed Marsh to appear by telephone.[1] The defendant did not appear at the hearing, and no one appeared on defendant's behalf. On plaintiff's request the Court took judicial notice of the court filings in this matter, as well as the filings in the companion case, *Marsh v. Phelps County,*

---

[1] Marsh is a resident of Wilsonville, Furnas County, Nebraska, which is approximately a three-hour drive from the Denney Federal Building in Lincoln where the hearing was held.

*et al.*, 4:16-CV-3032. Plaintiff offered six exhibits into evidence, which were received without objection. The Court heard sworn testimony from Marsh and received evidence with respect to her claim for lost wages in the past and future lost earnings.

## BACKGROUND

On April 4, 2017, the Court ordered that Marsh's motion for default judgment against defendant Campana in his individual capacity would be held in abeyance pending the Eighth Circuit's disposition of Marsh's appeal in the companion case. [Filing 29](). In so doing, the Court found that Marsh established a § 1983 civil rights claim regarding her Eighth Amendment Constitutional right to be free from cruel and unusual punishment. Specifically, the Court concluded that Campana, a Phelps County correctional officer, subjected Marsh to sexual contact while she was confined in the Phelps County jail. Accordingly, the Court found that default judgment would be warranted, after disposition of the companion case appeal and a determination of Marsh's damages. The Court will now enter that default judgment.

## ANALYSIS

The testimony and evidence adduced at the hearing was compelling. In late June 2012, defendant Campana sexually assaulted Marsh when she was an inmate at the Phelps County Correctional facility. Marsh was serving a five-day sentence to pay off fines she had been assessed for passing two insufficient fund checks. Although she found the money to make restitution to the merchant that received the bad checks, she could not afford to pay the fines, and so had to serve out the fines in jail.

Marsh had served a three-day sentence in May, also for passing an insufficient fund check, without any indication that Campana would present a

threat or danger. Although she cannot recall the specific day, early in her June incarceration, Campana came into her jail cell and approached her as she stood next to the sink. Marsh had three cellmates. Two of her cellmates were at the other end of the cell near their bunks, and the third was in the bathroom. None of the three would have been able to see what was about to transpire.

Campana trapped Marsh against the sink and began kissing her neck. He then stuck his hand into her jail jumpsuit and began fondling her breast. He pulled her jumpsuit aside and began sucking on her nipple. Next, he moved his hand down to her crotch and began fondling, and eventually digitally penetrated her vagina. Campana told Marsh during the assault that the surveillance cameras could not see what he was doing. He said something to the effect that he wanted her to feel better. When Campana stopped, he told her that he would be back to make them both feel better. Marsh believed that Campana intended to come back and force her into intercourse.

Marsh did not scream or cry out during Campana's assault. She believed that none of her cellmates knew what happened. She was afraid to tell anyone in the jail because she had no idea who she could trust. Marsh was an average sized woman, and Campana was described as a short, but heavy-set man. She found herself trapped against a sink, unable to escape a physically dominant jailer, told that no one would see what he was doing to her, and afraid to call out for help not knowing if help would be forthcoming. In addition, she had no way of knowing what would happen if she reported Campana. (Would the other officers take her seriously? Would there be reprisals or retribution for reporting a fellow officer?) Having no way of knowing, she served out the remainder of her five-day sentence in silence. She stayed away from Campana and the area she now knew was not under surveillance. Marsh said nothing about what Campana did to her until his assaults on other inmates came to light.

Once released, Marsh developed what she described as bad anger and attention problems. She sought treatment from a family medicine physician in nearby Holdrege, Nebraska. The physician prescribed medications to treat Marsh's attention disorder, depression, anxiety and insomnia symptoms. Although Marsh was compliant with her medication (with the exception of when she could not afford the cost of a prescription), her depression, anxiety, and insomnia symptoms showed little improvement. She reported being afraid to go out of her house. Marsh believed that everyone knew what happened to her, and that everyone believed that what happened to her was her own fault.

In November 2015, Marsh was referred to the Richard Young Outpatient Clinic in Kearney, Nebraska—a provider specializing in mental health treatment. The evidence reveals Marsh reported that she struggled with high levels of depression, feeling overwhelmed and hopeless, having little motivation, and having feelings of excessive guilt. She experienced periods of tearfulness that she could not control. Marsh also reported having frequent nightmares that occur on the topic of sexual assaults, and intrusive thoughts and flashbacks to Campana's sexual assault. Marsh began sessions with a therapist whom she continues to see once or twice per month. Her diagnosis in 2015 and 2016 was identified as post-traumatic stress disorder, insomnia, and the victim of sexual assault.

Marsh has training and, prior to the assault, worked as a Certified Nursing Assistant, primarily providing care to the elderly. Marsh worked as a waitress for a short period of time after her release from jail in June 2012. However, since 2012 Marsh has been unable to work and has received Social Security disability assistance. Her panic attacks are such that she has difficulty leaving her home. Before the assault, she shared a home with her fiancé and two sons. She also had other family members—her mother, step-father and two sisters—who all lived close by. Now, she lives alone and feels

like her family has abandoned her. Her therapist has given her strategies for dealing with her panic attacks, but Marsh recognizes that it will be a long process for her to gain enough trust to go out in public again without feeling a sense of panic or feeling overwhelmed.

After hearing Marsh's testimony and reviewing the evidence, the Court finds Marsh's testimony to be credible. Her five-day sentence to serve out some fines for passing bad checks has turned into a sentence of home confinement for the foreseeable future—as a result of Campana's sexual assault.

All too often victims of sexual abuse such as Marsh do not come forward immediately, and that delay in reporting is then used to infer either a lack of credibility, or worse yet, that what the victim experienced wasn't all that bad. The Court rejects both inferences. All sexual assaults, by definition, are acts of domination and control, which are clearly acts of violence to the victim being dominated and controlled. Those that were dominated, controlled, and violated are entitled to full compensation to redress their injury and related damages.

## COMPENSATORY AND PUNITIVE DAMAGES

Plainly, a sexual assault is no part of a prisoner's punishment. *Berryhill v. Schriro,* 137 F.3d 1073, 1075 (8th Cir. 1998). Damages in a § 1983 action are ordinarily determined according to common law tort principles. *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 306 (1986). Compensatory damages include not only economic loss but noneconomic loss such as personal humiliation, mental anguish, and emotional suffering. *Id.* at 307; *Coleman v. Rahija,* 114 F.3d 778, 786 (8th Cir. 1997). Evidence of physical pain and emotional suffering may support an award of compensatory damages that well exceeds actual out-of-pocket expenses. *Coleman,* 114 F.3d at 786-87. Punitive damages may be awarded when a defendant's conduct shows an evil motive or intent, or when it involves reckless or callous indifference to the federally

protected rights of others. *Smith v. Wade,* 461 U.S. 30, 56 (1983); *see Schwab v. VonWald,* 638 F.3d 905, 924 (8th Cir. 2011).

The evidence clearly reveals Marsh's personal humiliation, mental anguish, and emotional suffering. The Court finds that Marsh is entitled to special damages in the amount of $310,000.00 for her lost wages and lost earning in the future, and general damages in the amount of $500,000.00 for the significant humiliation she experienced, as well as for the extreme mental anguish and emotional suffering that she has endured and will continue to suffer in the future. Thus, the Court finds that Marsh is entitled to compensatory damages in the total sum of $810,000.00.

In addition, the Court finds that defendant Campana's acts were done with an evil motive. He acted intentionally to violate Marsh's Eighth Amendment right to be free from cruel and unusual punishment. The fact that Campana purposefully assaulted Marsh in an area he told her was outside the view of any surveillance camera is proof positive of his purposeful, deliberate, and intentional violation of Marsh's constitutional rights. The Court therefore finds that an award of punitive damages in the amount of $250,000.00 is warranted.

Marsh is the prevailing party, and may file an application for attorney fees and nontaxable costs with supporting documentation and a brief no later than 14 days after the entry of judgment. *See* 42 U.S.C. § 1988(b); Fed. R. Civ. P. 54(d); NECivR 54.3; NECivR 54.4.

IT IS ORDERED:

1. Marsh's motion for default judgment (filing 22) is granted.

2. Judgment is entered in favor of Plaintiff Ronda L. Marsh and against defendant Louis P. Campana, Jr., individually.

3. Plaintiff Ronda L. Marsh shall recover from defendant Louis P. Campana, Jr., individually, in the sum of $810,000.00 as compensatory damages, and $250,000.00 for punitive damages, with post-judgment interest thereon at the rate provided by 28 U.S.C. § 1961.

4. A separate judgment will be entered.

Dated this 27th day of September, 2018.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
United States District Judge